(NOT FOR PUBLICATION) (Doc. No. 1, 5)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| MEDFORD CROSSINGS NORTH LLC, et al., | : | |
| | : | |
| Debtors. | : | |
| | : | |
| MEDFORD VILLAGE EAST ASSOCIATES, LLC and LAUREL PINES, LLC, | : | Civil No. 11-2583 (RBK) |
| | : | |
| Appellants, | : | **OPINION** |
| | : | |
| v. | : | |
| | : | |
| MEDFORD CROSSINGS NORTH LLC, et al., | : | |
| | : | |
| Appellees/Debtors. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on appeal by Medford Village East Associates, LLC ("MVE") and Laurel Pines, LLC ("Laurel") (collectively, "Appellants") from a decision by the United States Bankruptcy Court for the District of New Jersey approving a settlement ("Settlement Agreement" or "Agreement") between Medford Crossings North, LLC, et al. ("Appellees" or "Debtors")[1] and the Debtors' principals. Appellants raise several grounds for appeal, which are based on Appellants' assumption that the claims involved in the Settlement

---

[1] The Debtors are Medford Crossings North LLC; Medford Crossings South LLC; Purple Tree One LLC; Purple Tree Two LLC; Purple Tree Three LLC; Purple Tree Four LLC; Purple Tree Five LLC; Purple Tree Ten LLC; Purple Tree Investments LLC; FC Medford Residential LLC; Medford Crossings North Urban Renewal LLC; and Medford Crossings South Urban Renewal LLC.

1

Agreement likely belong to MVE and its affiliates. However, because Appellants are not able to demonstrate that the claims at issue in the Settlement Agreement are claims that Appellants own, the Court finds that the injury Appellants allegedly suffer because of the Settlement Agreement is indirect, and Appellants therefore lack standing to appeal the Settlement Agreement. Because the Court finds that Appellants lack standing, the instant appeal of the Bankruptcy Court's order is dismissed.

I.   BACKGROUND[2]

In 1996, litigation began in New Jersey state court ("the state court litigation") between Appellants, Medford Township, and other parties with respect to a development project ("the project"). Appellees became involved in the project approximately eight years after the state court litigation had begun.[3] Appellees Medford Crossings North, LLC ("MCN") and Medford Crossings South, LLC ("MCS") were created to purchase, hold title to, and develop portions of the project. Appellees Purple Tree Investments, LLC, Purple Tree One, LLC, Purple Tree Two, LLC, Purple Tree Three, LCC, Purple Tree Four, LLC, Purple Tree Five, LLC and Purple Tree Ten, LLC ("the Purple Tree entities") were created to sell residential rights related to the project.

In March 2005, Stephen Samost, MVE, Medford Township and the Medford Planning Board entered into a Memorandum of Understanding (the "MOU"), which set forth a modified plan for the development of the project. The MOU designated Appellees MCN and MCS as redevelopers of the project. On May 20, 2005, the parties to the litigation, MCN and MCS entered into a Stipulation. The Stipulation provided that the litigation would be deemed settled, subject to the parties' compliance with agreements to be executed pursuant to the settlement.

---

[2] This Court has had occasion to address the facts underlying this dispute in a previous Opinion, Medford Village East Assocs., LLC v. Medford Crossings North LLC, 2009 U.S. Dist. LEXIS 50464 (D.N.J. June 15, 2009) ("2009 Op."), which addressed an earlier appeal of a different decision by the Bankruptcy Court in these proceedings. Except where otherwise indicated, that Opinion is the source of the factual summary included.
[3] At some point, various Appellees and related entities became third-party defendants in the state court litigation.

The Stipulation also provided that any disputes relating to or arising from the Stipulation would be resolved by the Honorable John A. Sweeney, A.J.S.C., and that his decisions would be final and unappealable.

On April 28, 2006, certain of the Appellees, the Township, MVE, and others entered into Transaction Agreements relating to the development project. These agreements included the following: (1) Agreement of Sale in Lieu of Condemnation between MVE and Township of Medford; (2) MCN/MCS/PT Agreement of Sale between the Township of Medford and MCN, MCS, and Purple Tree Investments, LLC; (3) Redevelopment Agreement by and Between the Township of Medford and MCN and MCS; and (4) Agreement between MCN, MCS, Laurel Pines, LLC, and MVE. These agreements contained summary disposition and non-appealability provisions.

Beginning around August 2007, MVE filed a Motion to Compel Specific Performance under the Transaction Agreements and/or Motion for a Declaration of Breach, the Township filed a similar motion, and the Debtors and several related entities (collectively, "Freeco") filed a complaint against MVE, Laurel, Stephen Samost, and the Township of Medford in state court. Freeco's complaint was dismissed because it was inconsistent with the dispute resolution procedures contained in the Stipulation. Judge Sweeney also granted the state court plaintiffs' motion for specific performance by Freeco of the transaction agreements. Judge Sweeney struck out, noting it was anticipatory, language in the proposed order that stated that if Freeco failed to comply with the order, it would be in breach of various agreements. On October 17, 2007, the state court granted a motion filed by the plaintiffs, including Appellants, for an Order to Show Cause with Temporary Restraints. Also on October 17, Appellants and the other plaintiffs in the

state court litigation filed a Second Amended Complaint against various Freeco entities and principals.

Appellees MCN, MCS, and the Purple Tree Entities filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code on October 17, 2007.  The state court then eliminated from its Order to Show Cause those parties that had filed for bankruptcy.  On October 25, the remaining Appellees filed for bankruptcy, and they soon removed the state court litigation to the Bankruptcy Court.  The Bankruptcy Court granted the motion by Appellants and the Township for abstention, and it remanded the state court litigation.

Since then, Appellees have filed three Plans of Reorganization.[4]  In 2009, the Bankruptcy Court held confirmation hearings regarding the Third Amended Plan of Reorganization, and on January 20, 2011, the Bankruptcy Court ordered that the Third Amended Plan could not be confirmed.  Appellants' Br., Ex. 3.  Specifically, the Bankruptcy Court found that the proposed Amended Plan provided for the "extraordinary act" of "an injunction preventing any creditor from asserting any cause of action owned and/or settled by the Debtors and the Committee including, inter alia, all claims against the Third Party Releasees."  Id. at 5, 7.  The Bankruptcy Court found that, although "[t]he Debtors' reorganization goals are worthy and the Debtors have made great efforts in successfully crafting a Plan that complies with many of the provisions of section 1129 of the Bankruptcy Code," nevertheless the Plan's provision of Third Party Releases would constitute "an unprecedented expansion to any exception to 11 U.S.C. § 524(e) that might exist in this Circuit."  Id. at 8.

---

[4] After the Second Plan of Reorganization was filed in the Bankruptcy Court, this Court affirmed the Bankruptcy Court's decision that it had jurisdiction to consider the Plan of Reorganization.  Medford Village East Assocs., LLC v. Medford Crossings North LLC, 2009 U.S. Dist. LEXIS 50464 (D.N.J. June 15, 2009) ("2009 Op.").

The Debtors then proposed a Settlement Agreement that the Bankruptcy Court approved, and which the Appellants now bring before this Court on appeal. The Settlement Agreement provided the following:

(1) The Members[5] and the Individuals would pay Debtors $850,000 within five business days of the final order granting the 9019 Motion to approve the Settlement Agreement. This payment would fully satisfy the Debtors' Claims and any and all claims of the Debtors and their estates against the Members and/or the Individuals;

(2) In consideration for the payment, the Debtors would convey all of their right, title, and interest in the Reimbursement Rights to the Individuals, Members, and/or any designees. The Reimbursement Rights are compensation for expenditures made by the Debtors for the Project Plans and Permits and Approvals necessitated by the Transaction Agreements;

(3) The Debtors would pay to Obermayer Rebmann Maxwell & Hippel LLP, their former counsel, the Allowed Administrative Expense Payment. Instructions for the payment and provisions in the event of default were set out as well;

(4) The parties agreed "to take whatever action is necessary to cause the Obermayer Adversary Proceeding to be dismissed with prejudice" within five business days; and

(5) The Debtors would execute and deliver specific and general releases in favor of the Individuals and the Members.

Appellants' Br., Ex. 5, ¶¶ 2-7.

---

[5] The members are a group of limited liability companies, individuals, and corporations: Ripco Ventures, Inc.; Medford Crossings North Development Associates, LLC; Medford Crossings South Development Associates, LLC; FC Medford Residential LLC; Medford Crossings North II LLC; Medford Crossings South II LLC; and Carl Freedman and Mitchell Cohen in their capacities as owners of FC Medford Residential LLC.

## III. DISCUSSION

### A. "Person Aggrieved" Standing Requirement

Appellees allege that Appellants lack standing to bring the instant appeal of the Settlement Order. Appellants object as a preliminary matter that, because the issue of Appellants' standing was not raised at the Bankruptcy Court proceeding underlying the approval of the Settlement, Appellees may not raise that argument now at the appeals stage. Appellants' Reply Br., 2. However, as a jurisdictional issue, standing questions may be raised at any time, whether by one of the parties or by the court sua sponte. Juidice v. Vail, 430 U.S. 327, 331 (1977) ("Although raised by neither of the parties, we are first obliged to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Art. III . . . ."); see also General Motors Acceptance Corp. v. Dykes, 10 F.3d 184, 188 (3d Cir. 1993) (finding that the standard for standing in bankruptcy appeals "can be analogized to traditional doctrines of standing," and that the question of standing "is generally considered a question of fact for the district court," and going on to address the issue of standing even though it was not raised in the court below).

The Third Circuit has held that only a "person aggrieved" by an order of the Bankruptcy Court has standing to appeal that order. Id. ("[A]n appellant must qualify as a 'person aggrieved' to be eligible for appellate review of a bankruptcy court order.").[6] In order to be considered a "person aggrieved," one must be able to demonstrate that "the order [being appealed] diminishes one's property, increases one's burdens or impairs one's rights." Id. Moreover, the Third Circuit has indicated that "appellate standing in the bankruptcy context is more restrictive than

---

[6] "The appellate standing requirement in bankruptcy proceedings derives from Section 39(c) of the former Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (repealed 1978). . . . Although former Section 39(c) has no direct counterpart in the 1978 Bankruptcy Code, courts of appeals have recognized that the requirement of standing continues to be a prerequisite for appellate review in proceedings under the current Code." Dykes, 10 F.3d at 187.

6

Article III standing[,] and . . . parties involved in bankruptcy proceedings may nonetheless lack standing to appeal."  In re Global Indus. Techs., 645 F.3d 201, 209 n.21 (3d Cir. 2011) (internal quotation marks omitted).  Because bankruptcy proceedings "typically involve a myriad of parties indirectly affected by every bankruptcy court order, the need to limit collateral appeals is particularly acute."  Travelers Ins. Co. v. H.K. Porter Co., 45 F.3d 737, 741 (3d Cir. 1995) (internal quotation marks omitted).  Accordingly, when addressing a potential appellant's standing, the relevant inquiry is whether that party is "directly affected" by the bankruptcy court's order.  Id. (citing Kane v. Johns-Manville Corp, 843 F.2d 636, 642 (2d Cir. 1993) (holding that, if appellate standing were not limited, "bankruptcy litigation [would] become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order")).

In this case, Appellants assert that they have standing based on two separate grounds.  First, they contend that the Settlement Agreement released the Debtors from claims that had been asserted by MVE and Laurel.  Appellants' Br., 17.  Second, they argue that, because the Settlement requires payment by Appellees, it affects the amount of money that could be distributed to the Appellants for their bankruptcy claims.  Appellants' Reply Br., 5.  The Court addresses each of these purported grounds for standing in turn, and concludes that neither establishes Appellants as an aggrieved party for the purposes of a bankruptcy appeal.

### B. The Settlement Agreement Does Not Affect Appellants' Purported Claims from the State Court Litigation

Appellants argue that they are aggrieved by the Settlement because it releases Appellees from claims owned by Appellants.  Specifically, MVE and Laurel allege that, based on the Transaction Agreements, the Debtors and their principals were required "to fund the settlement

7

between MVE and the Township and to pay the consideration identified in the Condemnation Agreement." Appellants' Reply Br., 3. Appellants indicate that that "claim belongs to, and is the property of, MVE and Laurel," and, by releasing it, the Settlement Agreement directly injures Appellants such that they have standing to bring the instant appeal. Id. at 4. Moreover, Appellants acknowledge that "the Debtors may also have a claim against the principals," but they maintain that this issue is a matter of state law. Id. Thus Appellants appear to argue that, although the ownership of the claims is being disputed in state court, Appellants retain standing to bring the instant appeal.

The problem of whether or not the Debtors can agree to release certain claims has driven much of the bankruptcy proceedings to date. The inclusion of Third Party Releases was the reason why the Debtors' Third Amended Plan for Reorganization was not confirmed by the Bankruptcy Court. The Bankruptcy Court found that, if the Third Plan was approved, "the Debtors, their representatives and their estates will be deemed to have released the Third Party Releasees from any and all claims which the Debtors, their representatives or their estates have arising out of or by any reason." Appellants' Br., Ex 3 at 6. Furthermore, the release of certain claims has been considered in this Court as well. In reviewing the Bankruptcy Court's jurisdiction over the Debtors' Second Amended Plan of Reorganization, this Court found that the Appellants had standing to appeal the Bankruptcy Court's taking jurisdiction because "MVE's rights with respect to its claim against the Third Party Releasees [were] affected by the Bankruptcy Court's order" with respect to the Second Amended Plan, which meant that "MVE [was] aggrieved by it." 2009 Op., 8.

Likewise in the instant appeal, this Court finds that the question of Appellants' standing here turns on the releases contained in the Settlement Agreement. Appellants argue that the

8

Agreement before this Court on review constitutes an attempt to get around the rejection of the Third Amended Plan by "usurp[ing] the claims of MVE and Laurel, under the guise of a settlement with its insiders." Appellants Reply Br., 4.  However, this contention is undermined by the fact that the Agreement explicitly notes that "[t]he Bankruptcy Court denied confirmation of the [Third Amended] Plan because the settlement under the Plan was conditioned to approval of the Third Party Releases and the Bankruptcy Court determined that it could not approve the Third Party Releases." Appellants' Br., Ex. 5 at 6.  Furthermore, the agreement explains that, in light of the Bankruptcy Court's ruling on the Third Amended Plan, the Settlement Agreement explicitly indicates that "the Debtors, the members and the Individuals have negotiated a settlement of the Debtors' Claims that would not required approval of Third Party releases." Id. Finally, Appellees themselves aver that "[u]nlike the prior appeal [of the Second Amended Plan], this appeal of the Bankruptcy Court's Order Approving Settlement involves a settlement which does not compromise or otherwise affect any alleged claims or causes of action which allegedly belong to MVE or Laurel Pines." Appellees' Br. at 23 n.11.

      Appellants' claim to standing is also undermined by the fact that the Settlement Agreement does not explicitly mention the release of claims arising from the state-law-governed Transaction Agreements.  Nor do Appellants succeed particularly in clarifying to this Court the precise mechanism according to which the Settlement Agreement purportedly releases the claims that purportedly belong to Appellants.  As Appellees point out, "[t]he Settlement resolved claims among the Debtors, Obermayer, the Members, and the principals of the Members." Appellees' Opp. Br., 23.  acknowledges that the Settlement Agreement's releases concern some of the parties that the Debtors had attempted to release in their earlier Reorganization Plan.  The Agreement indicates, "[t]he releases to be delivered by the Debtors shall be substantially in the

9

form annexed hereto as Exhibit A." Appellants' Br., Ex. 5 at ¶ 7. The Agreement's Exhibit A, a document entitled "Mutual Release," states as follows:

> The Debtors, their bankruptcy estates, and their successors, assigns and affiliates, hereby release and forever discharge the Releasees and their respective heirs, representatives, agents, employees, attorneys, successors, assigns, members, officer, directors, partners, owners, individuals and affiliates, from any and all known and unknown claims of any nature whatsoever, which the Debtors, their bankruptcy estates, or their respective successors, assigns and affiliates now or hereafter can or may have against the Releasees, from the beginning of the world to the date of this Release, including, but not limited to, any claims or liabilities relating to, or arising from, (a) the business, operations, conduct, capitalization, funding or management of the Debtors and/or the Medford Crossings project, (b) the Medford Crossings project, (c) any transactions with the Debtors, (d) any transactions with the Releasees relating to the Debtors or the Medford Crossings project.

Appellants' Br., Ex. 5 at Ex. A ("Mutual Release"). The "Releasees" referred to are defined as Ripco Ventures, Inc.; Medford Crossings Reevelopment Associates, LLC; FC Medford Residential LLC; Medford Crossings North II LLC; Medford Crossings South II LLC; Carl Freedman and Mitchell Cohen in their capacities as owners of FC Medford Residential LLC; Todd Cooper; Peter Ripka; Chris Conlon; Carl Freedman; and Mitchell Cohen. Many of these entities are the same "Members" that the rejected Third Amended Plan of Reorganization sought to release through the Third Party Releases—that is, the same Releasees who benefitted from the Releases previously deemed unconfirmable by the Bankruptcy Court.[7]

However, despite the Agreement's release of some of the same parties that the Third Amended Plan sought to release, there is no evidence that the claims themselves that are being released in the Settlement Agreement are the same as those addressed in the Third Amended Plan. In fact, in confirming the Settlement Agreement, the Bankruptcy Court "ma[de] no

---

[7] In rejecting the Third Amended Plan, the Bankruptcy Court Opinion explained that "Third Party Releasees is defined by the Plan as the 'Members, . . . including without limitation Mitchell Cohen; Carl Freedman; FC Development Group, LLC; Freedman Cohen Development LLC; Medford Crossings South Development Assoc, LLC; Medford Crossings South II, LC; Medford Crossings North II, LLC; Medford Crossings Restaurants, LLC; Christopher Conlon; Todd Cooper; Peter Ripka, and Ripco Ventures, Inc., and any Persons sharing the profits of Debtor, FC Medford Residential LLC . . . .'" Appellants' Br., Ex. 3 at 17 n.8.

determination as to what claims the debtor has as opposed to what claims MVE has against the principals." Appellants' Br., Ex. 2 at 18. The Bankruptcy Court asked, "why would I be deciding what claims MVE has? I'm not involved in the State Court litigation. Whatever claims the debtor has are the debtors' claims." Id. In essence, the Bankruptcy Court refrained from determining which claims were being released in the Settlement Agreement, and announced that it was authorizing a Settlement that approved the release of any claims that the Debtors legally owned and thus legally could release others from. The Bankruptcy Court determined that Appellant MVE would not have the right to "whatever claims the debtor has against its own members," and that "if there is a dispute about" which claims the Appellees were releasing, then "somebody may have to come back here" to settle it. Id.

The Bankruptcy Court thus acknowledged the possibility that, at some future point, Appellants may win a determination—in state court, or perhaps the Bankruptcy Court—that the Debtors released rights that belonged to Appellants. However, although the releases contained in the approved Settlement Agreement concern releasees that overlap with the Releasees named in the unconfirmable Third Amended Plan, nothing in the Agreement establishes that the releases included therein belong to Appellants. Moreover, as the Bankruptcy Court also acknowledged, as a legal matter, Appellees only have the authority to release those claims that they own. This means that the Settlement Agreement only has the power to release those claims that are owned by Appellees—and not any claims belonging to Appellants.

The possibility that released claims may later be adjudicated to belong to Appellants is insufficient to confer appellate standing because it fails to meet the requirement that, for the purposes of standing in appellate bankruptcy proceedings, any alleged injury to the purported appellant must be direct. In Travelers Insurance Co. v. H.K. Porter Co., the Third Circuit

11

stressed that a "person aggrieved" by a bankruptcy court order must suffer a direct injury to his or her property, or a direct impairment to his or her rights. 45 F.3d 737, 742 (3d Cir. 1995). In Travelers, because it appeared that appellee Porter's estate assets were likely to be depleted by a claim from the Internal Revenue Service and other asbestos-related personal injury claims, a group of claimants withdrew their claims against Porter for asbestos-related property damages. Id. at 739-40. However, on discovering that Porter might have been covered by insurance policies, including a policy issued by Travelers, the claimants filed a motion to reinstate their withdrawn claims. Id. at 740. Over Travelers's objection, the bankruptcy court reinstated some of the claims. Id. When Travelers appealed that decision to the district court, that court affirmed the bankruptcy court's reinstatement order. Id. Travelers then sought review at the Third Circuit Court of Appeals, which did not reach the substantive issues below because it determined that Travelers lacked appellate standing. The Travelers Court found that "Travelers' interest in the order reinstating the claims against Porter [was] too remote and contingent to satisfy the standing requirement of bankruptcy appeals," since "Travelers' potential exposure [to liability] . . . turn[ed] both on the success of the Claimants in their prosecution of claims against Porter, and on a judicial determination that the policy issued by Travelers cover[ed] the claims. . . ." Id. at 741-42.

Similarly, in this case, whether or not Appellants are negatively affected by the Settlement Agreement will turn on a determination that the claims disputed in the state court litigation belong to Appellants and not Appellees, and further, that the claims found to belong to Appellants were, indeed, released by the Agreement. Thus Appellants' aggrievement by the Settlement Agreement, like the appellant insurance company in Travelers, is attenuated because

12

contingent on later findings not currently before the Bankruptcy Court or this Court, and not sufficiently direct to confer standing at this time.

### C. Reduction in Funds Available for Bankruptcy Claims Affects Appellants Only Indirectly

Appellants also claim standing on another ground—namely, that the $850,000 settlement award will deprive them of funds that might be allocated to them in the event that they succeed on their bankruptcy claims.  Like Appellants' other claim of injury as a result of the Settlement Agreement, Appellants' predicted injury turns on the success of their prosecution of their claims again the Debtors in the bankruptcy proceedings.  Accordingly, it is too remote and contingent to confer standing upon Appellants.  Moreover, Appellants' theory would render appellate standing in bankruptcy proceedings overly broad; it implies that MVE and Laurel should be able to appeal any action involving a reduction in Appellees' available funds.  Such a theory seeks to expand the "person aggrieved" standard well beyond the narrow bounds drawn by the Third Circuit, and fails to meet the directness requirement articulated by that court in <u>Travelers</u> and elsewhere.

### IV. CONCLUSION

For the foregoing reasons, this Court finds that Appellants lack standing to bring the instant appeal of the Bankruptcy Court's order, and the appeal is accordingly **DISMISSED**.


Date: 2/1/2012                                                         /s/ Robert B. Kugler
                                                                       ROBERT B. KUGLER
                                                                       United States District Judge